**UNITED STATES DISTRICT COURT**   **EASTERN DISTRICT OF TEXAS**

UNITED STATES OF AMERICA     §
    §
*versus*     §     CASE NO. 1:17-CR-143
    §
JEREMY LYNN PHILLIPS     §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Jeremy Lynn Phillips's ("Phillips") *pro se* Motion for Compassionate Release (#44), wherein he requests that the court release him from imprisonment due to "extraordinary and compelling reasons." The Government filed a response in opposition (#46). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On December 6, 2017, a grand jury for the Eastern District of Texas, Beaumont Division, returned a two-count Indictment against Phillips. Count 1 charged Phillips with Possession with Intent to Distribute a Controlled Substance (Methamphetamine), in violation of 21 U.S.C. § 841(a)(1); Count 2 charged Phillips with Use and Carry of a Firearm In, During, and In Relation to a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c).

On April 10, 2018, Phillips pleaded guilty to Count 1 before United States Magistrate Judge Keith F. Giblin  pursuant to a non-binding plea agreement. On August 1, 2018, the court sentenced Phillips to 160 months' imprisonment, to be followed by a five-year term of supervised release, and a $100.00 special assessment. Phillips did not file a direct appeal. Phillips's motion

to vacate, set aside, or correct sentence filed on May 2, 2023, pursuant to 28 U.S.C. § 2255 is currently pending. Phillips is presently incarcerated at United States Penitentiary Lee, located in Pennington Gap, Virginia ("USP Lee"), with a projected release date of September 14, 2030.

## II.   Appointment of Counsel

Phillips requests the appointment of counsel to assist him in filing a motion for compassionate release under 18 U.S.C. § 3582(c). There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013). Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with

factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Phillips is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Phillips provides no basis

for the court to conclude that the appointment of counsel would benefit him or the court in addressing his request. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In this situation, he has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Phillips is 38 years old and there is no indication that he is seriously ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Phillips's motion for appointment of counsel is denied.

III.   <u>Analysis</u>

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *Jackson*, 27 F.4th at 1089; *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the

administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).

Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse

6

[defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this instance, Phillips is foreclosed from obtaining relief because there is no indication that he has submitted a request for compassionate release based on the circumstances raised in his motion to the warden of the facility where he is housed.  *See United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion").  While Phillips states he exhausted his administrative remedies with Warden J.C. Streeval at USP Lee, this assertion is conclusory and is not supported by any records or exhibits.  Both the BOP and Probation report that there are no BOP records or any records at USP Lee indicating that Phillips submitted a request for compassionate release to the warden.  Thus, the court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period.  *See Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-*

*Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").  Therefore, at this time, the court does not have the authority to grant the relief Phillips requests.  Alternatively, nothing in the motion indicates that extraordinary and compelling reasons exist to release Phillips from confinement.

B.    Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must satisfy three criteria.  *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022) ("[A] prisoner seeking compassionate release must overcome three hurdles." (quoting *Jackson*, 27 F.4th at 1089)); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Shkambi*, 993 F.3d at 391; *see Rollins*, 53 F.4th at 358.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Shkambi*, 993 F.3d at 392; *accord Rollins*, 53 F.4th at 358.

Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Shkambi*, 993 F.3d at 392; *accord Rollins*, 53 F.4th at 358; *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.  Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392.  Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes the reasons that qualify as extraordinary and compelling.[2]  However, § 1B1.13 references only

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission previously defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

The proposed amendments, however, revise § 1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions. The amendments also make two structural changes to § 1B1.13.  First, the description of the permissible bases for a reduction in sentence is moved from the Commentary to the policy statement itself.  Second, Application Notes 2 and 3 are modified and are moved into the policy statement as new subsections (e) and (d). New subsection (d) adopts the same language as Application Note 3, which states that pursuant to 28 U.S.C. § 994(t), rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for purposes of § 1B1.13, but adds that rehabilitation of the defendant while incarcerated may be considered in combination with other circumstances in determining whether a sentence reduction is warranted.  Application Note 2 provided that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a

---

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  Until recently, the Commission has been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  On August 4, 2022, the United States Senate confirmed seven new members to the Commission.  The Commission now has a quorum for the first time in over three years.  The newly constituted Commission issued proposed amendments to the Sentencing Guidelines on April 27, 2023, with an effective date of November 1, 2023.

reduction in the term of imprisonment." New subsection (e) retains this instruction without change.

Because the proposed amendments have not yet been adopted, the court continues to view the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). A review of dictionary definitions also sheds light on the meaning of these terms. *See Escajeda*, 58 F.4th at 186. The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see Escajeda*, 58 F.4th at 186; *United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021). "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United*

*States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)); *see Escajeda*, 58 F.4th at 186.  Hence, to prevail, a prisoner seeking compassionate release must "show that he 'face[s] some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner' that leads 'irresistibly' to the conclusion that the prisoner has a 'singular' and 'remarkable' need for early release." *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *1 (5th Cir. June 22, 2023) (quoting *Escajeda*, 58 F.4th at 186).

### 1.   Medical Condition

In the pending motion, Phillips, age 38, contends that he is eligible for compassionate release due to his mental health condition and the detrimental effects of COVID-19.  He states that his mother died from COVID-19 and, as a result, he fears he too will die from COVID-19. Phillips does not, however, identify an underlying medical health condition that puts him at risk of contracting COVID-19.  He further alleges that the COVID-19 pandemic has exacerbated his depression, anxiety, and post-traumatic stress disorder ("PTSD").  He admits to using drugs in prison and complains that his substance abuse disorder goes untreated in the BOP, causing him to resort to selling drugs in prison to finance his addiction.[4]  Phillips alleges that his release would allow him to obtain regular treatment for his mental health conditions and substance abuse disorder.

---

[4] Phillips states he has sought help with the Medication Assisted Therapy ("MAT") program, "only to be put off."

Under the proposed amendments, as set forth in § 1B1.13(b), the policy statement provides that extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1)    Medical Circumstances of the Defendant.—

    (A)    The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-state organ disease, and advanced dementia.

    (B)    The defendant is—

        (i)    suffering from a serious physical or medical condition,

        (ii)   suffering from a serious functional or cognitive impairment, or

        (iii)  experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (C)    the defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

    (D)    The defendant presents the following circumstances—

        (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal state, or local authority;

13

> (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak or infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii)    such risk cannot be adequately mitigated in a timely manner.

Here, according to Phillips's Presentence Investigation Report ("PSR"), he was first diagnosed with depression and anxiety upon his original detention relating to his current conviction; Phillips described the onset as situational given his recent detention and reported no other problems.  At the time his PSR was prepared, Phillips was prescribed Celexa 20 mg to treat his depression and anxiety.  His BOP medical records reveal his depression and anxiety are currently in remission, but he has been diagnosed with obesity, has received treatment for chronic viral hepatitis C and latent tuberculosis infection, abuses non-psychoactive substances (methamphetamine), and has a history of noncompliance with medical treatment.[5]  There is nothing in Phillips's medical records indicating he has been formally diagnosed with PTSD.  Probation and the Government report that Phillips is classified as a BOP Medical Care Level 1 inmate.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 1 inmates "are less than 70 years of age and are generally healthy.  They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."

---

[5] The medical records do not specify how Phillips is non-compliant.  It is presumed he is considered non-compliant due to his continued abuse of recreational drugs which can exacerbate his liver disease.  There is no indication in the records that Phillips did not receive the full treatments for hepatitis C and tuberculosis.

None of Phillips's medical conditions are serious, require specialized care, or substantially diminish his ability to provide self-care within the context of a correctional facility, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release.  *See Thompson*, 984 F.3d at 433.  To the contrary, Phillips's conditions are commonplace and are well managed with medication.  *See id.* The court acknowledges that, according to the Centers for Disease Control and Prevention ("CDC") website, three of Phillips's underlying medical conditions—obesity, hepatitis C, and substance abuse disorder—can make him more likely to become severely ill should he contract COVID-19[6]; nonetheless, such commonplace afflictions do not make Phillips's case "extraordinary."  *See id.* at 434.

According to the CDC, 42.5% of the adult population in the United States is obese and 73.6% is overweight.[7]  Due to its prevalence, obesity cannot be deemed "extraordinary" in order to merit compassionate release.  *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. Jan. 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even

---

[6] In relevant part, the CDC states that adults who have a history of obesity, liver disease, and substance use disorders can be more likely to become severely ill from COVID-19.

[7] His BOP medical records show the following recorded weights for Phillips: 252 pounds on February 16, 2023, 189.2 pounds on January 20, 2023, and 266 pounds on August 12, 2022.  Using his reported height of 6' 2" tall, his most recent recorded weight of 252 pounds yields a Body Mass Index ("BMI") of 32.4, which is considered obese.  According to the CDC, a BMI below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

When monitored and well managed, hepatitis C does not constitute an extraordinary and compelling reason meriting compassionate release.  *See Gardner*, 2021 WL 1110298, at *3; *United States v. Davis*, No. CR 07-357, 2020 WL 5645981, at *4 (E.D. La. Sept. 22, 2020) (collecting cases) (stating that "courts have found that hepatitis C does not amount to an extraordinary or compelling reason for [compassionate] release"); *see also United States v. Dalton*, No. 2:18-cr-00245, 2023 WL 324510, at *2-3 (S.D. W.Va. Jan. 19, 2023) (denying compassionate release to a prisoner whose spleen had been surgically removed, suffered from Hepatitis C, and was a long-term cigarette smoker); *United States v. Caley*, No. 91-CR-80668, 2022 WL 1449699, at *2 (E.D. Mich. May 9, 2022) (denying compassionate release where the defendant suffered from epilepsy, a seizure disorder, and Hepatitis C).

The CDC website indicates that a substance abuse disorder can also make an individual more likely to become severely ill should he contract COVID-19.  According to the Substance Abuse and Mental Health Services Administration, however, approximately 20.3 million

Americans, aged 12 and older, battled a substance use disorder in 2018.  Hence, having such a widespread condition does not make Phillips's case "extraordinary."

Likewise, as to Phillips's diagnosis of latent tuberculosis,[8] when monitored and well managed, tuberculosis does not constitute an extraordinary and compelling reason warranting compassionate release.  *See United States v. Gardner*, No. 1:11-CR-87-HSO-JCG-1, 2021 WL 1110298, at *3 (S.D. Miss. Mar. 23, 2021) (finding that a defendant's chronic conditions of hepatitis C and tuberculosis did not amount to extraordinary and compelling reasons warranting release); *United States v. Sattar*, 467 F. Supp. 3d 152, 156 (S.D.N.Y. 2020) ("Although tuberculosis may be a risk factor for severe illness resulting from COVID-19, [the defendant] has not demonstrated that his tuberculosis, which is latent, is either not controlled currently or that it could not be addressed adequately at [the facility where he is housed].").

Finally, to the extent Phillips contends his alleged PTSD constitutes an extraordinary and compelling reason for granting him compassionate release, "[c]ourts are . . . rightly skeptical of allowing mental health conditions to play a dominant role in a defendant's motion for compassionate release because such conditions do not inherently increase a defendant's susceptibility to COVID-19."  *United States v. Falls*, No. 14-CR-74 CJW-MAR, 2020 WL 4193271, at *6 (N.D. Iowa July 21, 2020); *see United States v. James*, No. 15-cr-00255 (SRN),

---

[8] According to the CDC, tuberculosis is caused by a bacterium that attacks the body and usually focuses on the lungs.  Not everyone infected with tuberculosis bacteria becomes sick.  As a result, two tuberculosis-related conditions exist—latent tuberculosis and active tuberculosis.  Unlike people with active tuberculosis, those with latent tuberculosis have no symptoms, do not feel sick, and cannot spread tuberculosis bacteria to others.  People with latent tuberculosis may develop active tuberculosis, however, if they do not receive treatment for their infection.

17

2020 WL 3567835, at *4 (July 1, 2020) (holding that mental health disorders, among other things, are not known to increase a person's susceptibility to COVID-19); *United States v. Sam*, No. 17-83, 2020 WL 3415771, at *3 (E.D. La. June 22, 2020) (finding that the defendant failed to meet his burden to establish that his PTSD was an extraordinary and compelling medical condition because the disorder was not a terminal illness and did not substantially diminish the defendant's ability to provide self-care within the correctional facility); *United States v. Polnitz*, No. 17-CR-201-PP, 2020 WL 3129643, at *3-4 (E.D. Wis. June 12, 2020) (denying release where the defendant had mental health issues, moderate obesity, and asthma).  Thus, when mental health concerns are validly raised in a motion for compassionate release, "courts must carefully assess the ramifications of a defendant's mental health on [his] physical health, the extent to which COVID-19 would exacerbate such ramifications, and the mental health resources available to the defendant in the [prison]." *Falls*, 2020 WL 4193271, at *6.  In this case, the court finds that Phillips has not validly raised any mental health concerns.  As previously stated, there is no evidence that Phillips has been diagnosed with PTSD, and his depression and anxiety are noted by the BOP as currently being in remission.  In any event, Phillips fails to describe what effect, if any, his alleged PTSD has on his physical health, and the court can find no identifiable adverse consequences.  To the contrary, Phillips's purported PTSD "has not substantially diminished his ability to provide self-care in prison, even in light of the COVID-19 pandemic." *United States v. Hight*, 488 F. Supp. 3d 184, 192 (E.D. Pa. 2020) (holding that a defendant's PTSD did not present extraordinary and compelling circumstances because there was no indication of the disorder in the defendant's medical records and he was still able to provide self-care in prison).

In this instance, Phillips's BOP records reveal that he is housed in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, is cleared for food service, and his current work detail is in the kitchen.  He is able to provide self-care in the institutional setting and is not limited in his activities of daily living.  Clearly, his medical condition did not hamper or prevent him from committing his offense of conviction or a myriad of prior and subsequent criminal offenses.  Thus, Phillips has failed to establish the existence of medical problems that would constitute extraordinary and compelling reasons to reduce his sentence.

2.   COVID-19

Phillips expresses apprehension about contracting COVID-19 while in prison.  He maintains that if he contracts COVID-19 it will be fatal for him and, due to prison overcrowding, there is no way to distance himself from other inmates.  Phillips also raises concerns regarding the spread of COVID-19 among the prison population.  Nevertheless, as of August 17, 2023, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,570) and 0 staff members at USP Lee as having confirmed positive cases of COVID-19, 442 inmates and 238 staff members who have recovered, and 0 inmates or staff who succumbed to the disease.  Thus, it appears that the facility where Phillips is housed is handling the outbreak appropriately and providing adequate medical care.

While Phillips expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage an outbreak within his correctional facility or that the facility is specifically unable to treat Phillips, if he were to contract the virus and develop COVID-19 symptoms while incarcerated.  *See* U.S.S.G. § 1B1.13(b)(1)(D).  The Fifth Circuit and other

courts have "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2; *see United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022) ("[A] generalized fear of COVID-19 does not automatically entitle a prisoner to release." (citing *Thompson*, 984 F.3d at 435)); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No.

3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19); *see also* U.S.S.G. § 1B1.13(b)(1)(D).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to all inmates and staff who wish to be inoculated.  According to www.bop.gov, USP Lee, where Phillips is housed, has fully inoculated 973 inmates and 231 staff members.  Indeed, according to Phillips's BOP medical records, he received the first dose of the Pfizer vaccine on April 14, 2021, and the second dose on May 4, 2021.  In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19.  *See United States v. Gibson*, No. 14-86, 2021 WL 3164176, at *2 (E.D. La. July 27, 2021) ("Courts have held that, once vaccinated, the efficacy of the COVID-19 vaccines preclude[s] the argument that a prisoner's susceptibility to the disease is extraordinary and compelling for purposes of § 3582(c)(1)(A)."); *United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19 are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No. 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Or. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and

a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

Hence, Phillips's concerns about contracting COVID-19 in prison provide no basis for relief.

    C.    <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).

Here, Phillips's offense of conviction stems from his arrest on April 1, 2015, after officers with the Orange Police Department and the Orange County Sheriff's Office executed a search warrant at his residence where they discovered a fully loaded Taurus, model The Judge .45/.410 caliber revolver in his living room.  In addition, while searching the bedroom, the officers discovered a suitcase sitting on top of a chest of drawers.  The suitcase was opened and officers discovered approximately 148.7 grams of methamphetamine (107.3 grams methamphetamine (actual)) and a second Taurus, model The Judge .45/.410 caliber revolver.  Phillips later admitted that all of the controlled substances in the residence belonged to him.  Notably, after Phillips bonded out on the original state charges, he committed seven burglaries as well as two instances of unauthorized use of a motor vehicle in a nine-day period.  He was arrested for these charges on August 4, 2016, and was sentenced on February 21, 2017, with respect to five of the seven burglary charges and one charge for unauthorized use of a motor vehicle.  At the time the PSR was prepared, Phillips was serving undischarged terms of imprisonment which ranged from 10 to 24 months.

In addition, Phillips has a long criminal history, dating back to when he was 23 years old. He has been convicted of:  Possession of Marijuana; Assault Causes Bodily Injury–Family Violence; Theft; Criminal Trespass; Failure to Identify; Burglary of Building (5x); and

Unauthorized Use of a Motor Vehicle.[9]  Contrary to Phillips's assertion, he is not a first time offender.  He has amassed a criminal history score of 10 which establishes a criminal history category of V, one category less than the highest level of VI.  Notably, Phillips's criminal history includes violent crimes, repeat offenses, and violations of probation and/or conditions of bond.  In short, Phillips's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).  Phillips's prison disciplinary history is also disturbing.  He has incurred numerous disciplinary violations, including:  use of drugs/alcohol (4x), being absent from assignment, assaulting another inmate, refusing to obey an order (2x), failing to stand count (2x), possessing a dangerous weapon, and stealing, all while in prison.  For many of these violations, Phillips lost significant amounts of good conduct time credit.

Regarding Phillips's history of drug abuse, courts are precluded from "lengthening a prison term in order to promote a criminal defendant's rehabilitation," but in the present case, the court is deciding whether to reduce, not extend, a sentence. *Tapia v. United States*, 564 U.S. 319, 321 (2011); *see Chambliss,* 948 F.3d at 694.  Phillips has a long history of abusing marijuana, cocaine, methamphetamine, heroin, and dilaudid.  He reported to Probation that he first used marijuana at the age of 15 and continued to use it three times per week until the age of 30.

---

[9] Phillips was also arrested for Burglary of Building (3x) and Unauthorized Use of a Motor Vehicle in 2017, but those charges were dismissed when he was convicted in other cases.  At the time the PSR was drafted, Phillips had charges pending against him for Failure to Identify and Possession of a Controlled Substance.  Finally, Phillips has several arrests where the disposition is unknown:  Assault/Family Violence, Possession of Drug Paraphernalia (2x), Failure to Maintain Financial Responsibility (2x), and Theft of Property (2x).

Phillips stated he also used cocaine for two months when he was 19 years old.  From age 30 to 31, Phillips used methamphetamine and heroin daily, and when he was unable to obtain methamphetamine, he reportedly used dilaudid as a substitute.  Moreover, Phillips currently admits to using and selling opiates and amphetamines while in BOP custody.  Therefore, releasing Phillips may facilitate his drug abuse, as he would gain unfettered access to over-the-counter medications and illegal drugs outside the BOP.

In addition, granting Phillips's request for compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentenc would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Id.*; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord Rodriguez*, 27 F.4th at 1100.  In the present case, releasing Phillips after he has served only 60 months (or approximately 37.5%) of his 160-month sentence

would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Phillips's track record is similarly a poor one. There is no reason to believe that Phillips would not revert to his prior drug-dealing and drug-abusing behavior, as well as the commission of a variety of other offenses, if released from prison at this juncture. *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021). Phillips's claim that he can obtain help through an outpatient mental health treatment program if released, when he has failed to take advantage of just such a program while in custody, is disingenuous and unavailing. Here, Phillips's past behavior, his current admitted use of drugs while in BOP custody, his facilitation of those drugs while in custody, his disciplinary history, his refusal to take advantage of the substance abuse programs while in custody, and his apparent refusal to recognize the wrongfulness of all his actions give cause for concern as to his future conduct. Like the court in *Lewis*, the court concludes that "Defendant's current term of imprisonment was and remains appropriate." 2021 WL 4519795, at *3. Phillips committed a serious offense that justified his sentence, and the circumstances he now identifies do not render that sentence unjust or inequitable. *See id.*

IV.   Nunc Pro Tunc Request

Phillips also requests that the court direct the BOP to award him prior custody credit for the months he spent in county jail and in state custody while awaiting federal prosecution and

sentencing.  The proper procedural vehicle for such a request is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  *United States v. Jackson*, 851 F. App'x 495, 497 (5th Cir. 2021) (holding that § 2241 is "the proper vehicle for obtaining credit for prior custody"); *United States v. Rodriguez-Falcon*, 710 F. App'x 242, 243 (5th Cir. 2018) (quoting *United States v. Setser*, 607 F.3d 128, 133 n.3 (5th Cir. 2010), *aff'd*, 566 U.S. 231 (2012)); *Robertson v. Werlich*, 667 F. App'x 853, 854 (5th Cir. 2016); *Arreola-Amaya v. Fed. Bureau of Prisons*, 623 F. App'x 710, 710 (5th Cir. 2015); *United States v. Howard*, 594 F. App'x 248, 249 (5th Cir. 2015) (noting that the Attorney General's decision in calculating a prisoner's time served is reviewable through a 28 U.S.C. § 2241 petition); *United States v. Martinez*, No. 3:14-CR-236-D(2), 2023 WL 3731394, at *3 (N.D. Tex. May 30, 2023) (stating the proper vehicle to challenge the execution of a sentence is a habeas petition under § 2241); *United States v. Green*, No. CR415-204, 2021 WL 1929552, at *2 (S.D. Ga. May 13, 2021) ("[T]he proper procedure for Defendant to mount a judicial challenge to the BOP's decision is to file a civil action under 28 U.S.C. § 2241 in the district and division of her confinement."); *United States v. King*, No. CR 2:17-823-2, 2021 WL 1550307, at *1 (S.D. Tex. Apr. 19, 2021) (holding that defendant's motion for hardship credit for hard time served should be brought pursuant to a § 2241 petition in that court where defendant is incarcerated after first exhausting her administrative remedies).

It is well established, however, that a petition for a writ of habeas corpus under § 2241, when filed by a defendant who is physically confined within the United States at the time of the motion, may be considered only by the district court in the jurisdiction where the defendant is confined.  *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district:  the district of

confinement."); *United States v. McPhearson*, 451 F. App'x 384, 387 (5th Cir. 2011) ("The only district that may consider a habeas corpus challenge to present physical confinement pursuant to § 2241 is the district in which the prisoner is confined."); *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1239 (D.C. Cir.) ("[A] district court may not entertain a habeas petition involving present physical custody unless the respondent custodian is within its territorial jurisdiction."), *cert. denied*, 543 U.S. 975 (2004); *Oklahoma v. Tellez*, No. 7:22-cv-00108-0, 2022 WL 17069132, at *2 (N.D. Tex. Nov. 17, 2022); *Hartfield v. Quarterman*, 603 F. Supp. 2d 943, 956 (S.D. Tex. 2009) (holding that the proper jurisdiction for a confined defendant bringing a § 2241 habeas petition was the Eastern District of Texas, where the defendant was confined, not the Southern District of Texas, where the defendant was convicted and sentenced).

Here, Phillips is currently confined at USP Lee in Pennington Gap, Virginia, which is within the jurisdiction of the Western District of Virginia. This court, therefore, lacks jurisdiction to address the merits of Phillips's request for nunc pro tunc designation. A district court that receives a § 2241 habeas petition but lacks jurisdiction, however, may transfer the petition to the appropriate federal district court if the transfer "is in the interest of justice." 28 U.S.C. § 1631; *Warner v. Rivers*, No. 3:22-CV-621-G-BK, 2022 WL 2195216, at *3 (N.D. Tex. May 31, 2022). A court need not transfer a § 2241 petition, however, if the transfer would be futile. *See Alvarado v. United States*, No. 7:20-CV-0347, 2021 WL 4464186, at *4 (S.D. Tex. May 21, 2021) (stating "[i]t is not in the interest of justice to transfer a clearly meritless case."); *United States v. Blankenship*, Cr. No. 12-00641 JMS, Civ. No. 19-00593 JMS-KJM, 2019 WL 5872471, at *2-3 (D. Haw. Nov. 1, 2019) (explaining that transfer of a prisoner's § 2241 petition was "not in the interest of justice" where the prisoner "[did] not allege that he submitted a claim for administrative

remedies, let alone that he exhausted such process"); *Porter v. United States*, No. 4:15-cv-0908-CLS-JEO, 2015 WL 9592432, at *1 (N.D. Ala. July 10, 2015) (recommending that the district court decline to transfer a prisoner's § 2241 petition in part because the prisoner failed to "allege resort to any administrative remedies or why doing so might have been futile"), *adopted by* No. 4:15-cv-0908-CLS-JEO, 2015 WL 9583285 (N.D. Ala. Dec. 31, 2015).

As explained above, Phillips has not demonstrated that he exhausted his administrative remedies regarding his request for compassionate release or his request for nunc pro tunc designation. Because Phillips has failed to satisfy this prerequisite to judicial review, transfer of his motion would be futile and not in the interest of justice. Accordingly, the court declines to transfer Phillips's request for nunc pro tunc designation to the Western District of Virginia, and this portion of his motion is dismissed without prejudice for lack of jurisdiction.

V.   Conclusion

In sum, Phillips has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. The 160 months' sentence of imprisonment imposed upon Phillips for Possession with Intent to Distribute 50 Grams or More of Methamphetamine comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this juncture. Accordingly, Phillips's Motion for Compassionate Release (#44) is DENIED. As to Phillips's request for nunc pro tunc designation, the request is DENIED for lack of jurisdiction. Phillips may file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Western District of Virginia to address this claim.

SIGNED at Beaumont, Texas, this 18th day of August, 2023.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE